## MATTER OF MATTI

### In Deportation Proceedings

### A-36438026

*Decided by Board February 27, 1984*

(1) The Board of Immigration Appeals denied an application for a waiver of deportation under section 241(f)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1251(f)(1) (1982), on the ground of statutory ineligibility as well as in the exercise of administrative discretion, concluding that an alien who is excludable under section 212(a)(19) of the Act, 8 U.S.C. § 1182(a)(19) (1982), for having entered the United States with an immigrant visa predicated upon a marriage fraud may not rely upon that fraud in order to obtain a waiver of deportation as a spouse of a United States citizen.

(2) In its decision, the Board of Immigration Appeals relied, in part, upon the legislative history of section 241(f) of the Act which reflects that the congressional intent was a humanitarian desire to unite families and preserve family ties by forestalling deportation where it would break up families composed, in part, of United States citizens or lawful permanent residents, and thus concluded that a marriage entered into solely for the purpose of obtaining immigration benefits was not a family tie which Congress intended to preserve under the statute.

CHARGE:

Order: Act of 1952—Sec. 241(a)(2) and 241(c) [8 U.S.C. § 1251(a)(2) and 1251(c)]—In the United States in violation of law—entered with immigrant visa procured by fraudulent marriage

Sec. 241(a)(1) [8 U.S.C. § 1251(a)(1)]—Excludable at entry under sec. 212(a)(14) [8 U.S.C. § 1182(a)(14)]—No valid labor certification

Sec. 241(a)(1) [8 U.S.C. § 1251(a)(1)]—Excludable at entry under sec. 212(a)(20) [8 U.S.C. § 1182(a)(20)]—No valid immigrant visa

ON BEHALF OF RESPONDENT:
Joseph A. Gatto, Esquire
2021 City National Bank Building
Detroit, Michigan 48226

ON BEHALF OF SERVICE:
Oliver Claypool, Jr.
General Attorney

John Gossart
Acting Appellate
Trial Attorney

BY: Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

In a decision dated September 28, 1981, an immigration judge found the respondent deportable on the charges set forth above and granted him voluntary departure in lieu of deportation. The respondent has appealed. The appeal will be dismissed.

The respondent is a male alien, a native and citizen of Iraq, who was last admitted to the United States on December 28, 1978, as the immediate relative spouse of an 18-year-old United States citizen named Vicki Guarnieri based on their December 13, 1978, marriage in Amman, Jordan. At the deportation hearing and in an affidavit, Ms. Guarnieri presented uncontroverted testimony that the marriage was entered into solely for the respondent to be able to immigrate and that she was paid $2,000 and expenses for agreeing to the marriage.

Ms. Guarnieri testified that her father had offered her $2,000 plus expenses to fly to Amman and marry the respondent, who was a cousin of her father's business partner. She flew into Amman on December 11, 1978, and was taken to the home of the priest who married them on December 13, 1978. She stayed at the Philadelphia Hotel in Amman until December 21, 1978, when she flew back to Detroit, alone. During her sojourn in Amman, she filed an immediate relative visa petition on behalf of the respondent and completed its accompanying documentation at the United States Embassy. She never cohabited with the respondent and the marriage was never consummated.

The respondent's own testimony corroborated Ms. Guarnieri's assertions that the marriage was entered into solely in order to facilitate the respondent's immigration into the United States. He testified that he married her to come here. He added that they never discussed living together since she could not speak Arabic. He had left Iraq on October 15, 1978, for Amman, Jordan, presumably for a 2-week vacation. He did not want to return to Iraq and married her solely to come here and file for asylum. He also admitted paying Ms. Guarnieri to marry him.

Consequently, we disagree with the respondent's contention on appeal that there is no evidence in the record that his marriage was a sham or fraudulent. Similarly, his reliance on the authority of cases dealing solely with marriage nonviability is misplaced. It is well settled that a sham marriage entered into solely in order to immigrate cannot be the basis for immigration benefits under the Immigration and Nationality Act. *Lutwak* v. *United States*, 344 U.S. 604 (1953); *Matter of M–*, 8 I&N Dec. 118 (BIA 1958; A.G. 1959); *accord Matter of Boromand*, 17 I&N Dec. 450 (BIA 1980); *Matter of McKee*, 17 I&N Dec. 332 (BIA 1980); *cf. Dabaghian* v. *Civiletti*, 607 F.2d 868 (9th Cir. 1979); *Menezes* v. *INS*, 601 F.2d 1028 (9th Cir.

1979). Accordingly, deportability as charged has been established by clear, unequivocal, and convincing evidence as required by *Woodby* v. *INS*, 385 U.S. 276 (1966), and 8 C.F.R. § 242.14(a) (1984). *See* sections 212(a)(14), (19), (20), 241(a) (1), (2), 241(c) of the Act, 8 U.S.C. §§ 1182(a)(14), (19), (20), 1251(a) (1), (2), 1251(c) (1982).

Subsequent to the immigration judge's September 28, 1981, decision, the Act was amended. *See* Immigration and Nationality Act Amendments of 1981, Pub. L. No. 97–116, 95 Stat. 1611. At oral argument, respondent's counsel submitted that under the newly amended section 241(f) of the Act, he is eligible for relief from deportability for having entered the United States with an immigrant visa obtained by fraud. As amended, the relevant portions of section 241(f) read as follows:

(1)(A) The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure or *have procured visas or other documentation, or entry into the United States, by fraud or misrepresentation,* whether willful or innocent, *may,* in the discretion of the Attorney General, *be waived* for any alien (other than an alien described in subsection (a)(19)) who—

(i) *is the spouse,* parent, or child *of a citizen of the United States* or of an alien lawfully admitted to the United States for permanent residence; and

(ii) was in possession of an immigrant visa or equivalent document and was *otherwise admissible* to the United States at the time of such entry *except for those grounds of inadmissibility specified under paragraphs (14), (20),* and (21) of section 212(a) which were a direct result of that fraud or misrepresentation.

(B) A waiver of deportation for fraud or misrepresentation granted under subparagraph (A) shall also operate to waive deportation based on the grounds of inadmissibility at entry described under subparagraph (A)(ii) directly resulting from such fraud or misrepresentation. (Emphasis added.)

The respondent's sole basis for claiming eligibility for section 241(f) relief is the same marriage to Ms. Guarnieri which we have found to be a sham, contracted solely for immigration purposes. He has no other immediate relative family ties here. The issue of whether an alien can rely on the very same sham marriage he used to fraudulently immigrate for 241(f) purposes is an issue of first impression. Prior to the 1981 amendments, such an issue would not have arisen since such an alien would also have been excludable under section 212(a)(14), and section 241(f) relief would have been unavailable. *See Matter of Montemayor,* 15 I&N Dec. 353 (BIA 1975), and cases cited therein; *cf. Matter of Anabo,* 18 I&N Dec. 87 (BIA 1981); *Matter of Da Lomba,* 16 I&N Dec. 616 (BIA 1978).

Unlike the old section 241(f) of the Act, the new section 241(f)(1), enacted in section 8 of the Immigration and Nationality Act Amendments of 1981, Pub. L. No. 97–116, 95 Stat. 1611, is applica-

ble to both willful and innocent misrepresentations and specifically waives those grounds of inadmissibility enumerated under sections 212(a)(14), (20), and (21) of the Act, which are a direct result of the misrepresentation. Relief under section 241(f)(1) now also requires the favorable exercise of administrative discretion. Consequently, the novel questions before us are whether an alien excludable at entry under section 212(a)(19) because of a sham marriage can rely on that same sham marriage for eligibility for section 241(f)(1) relief from deportability, and whether such relief is warranted as a matter of discretion. We answer both questions in the negative.

As stated above, the Supreme Court in *Lutwak* v. *United States, supra,* has specifically held that a sham marriage entered into solely in order to immigrate cannot be the basis for immigration benefits under the Act. Moreover, the legislative history of the original section 241(f) reflects that the congressional intent was a humanitarian desire to unite families and preserve family ties by forestalling deportation where it would break up a family composed in part of United States citizens or lawful permanent residents. *INS* v. *Errico,* 385 U.S. 214 (1966); *Matter of Da Lomba, supra,* at 617–18; *cf. Matter of Slade,* 10 I&N Dec. 128 (BIA 1962). We also note that Congress enacted section 204(c) of the Act, 8 U.S.C. § 1154(c) (1982), to forbid the issuance of immigrant visas to aliens who had previously obtained nonquota or preference status through a fraudulent marriage. *Matter of Slade, supra,* at 133. It is clear from this legislative history that a sham marriage is not the type of family tie which Congress intended to preserve in enacting section 241(f)(1). We conclude, accordingly, that the respondent is ineligible for such relief. We also hold in this case that section 241(f) relief is unwarranted as a matter of discretion because of the lack of countervailing equities.

Finally, we reach the respondent's applications for asylum and withholding of deportation under sections 208 and 243(h) of the Act, 8 U.S.C. §§ 1158 and 1253(h) (1982), based on his claim of a well-founded fear of persecution in his native Iraq. In order to qualify for asylum and temporary withholding of deportation, an applicant must establish that he is a "refugee" within the meaning of section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A) (1982). *Matter of Lam,* 18 I&N Dec. 15 (BIA 1981). That section defines a refugee as

any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

The respondent bears the burden of proof in asylum and section 243(h) relief applications to establish that his life or freedom would be threatened within the five circumscribed grounds of persecution enumerated in sections 101(a)(42) and 243(h)(1). *See Stevic v. Sava*, 678 F.2d 401 (2d Cir. 1982), *cert. granted sub nom. INS v. Stevic*, 460 U.S. 1010 (1983); *Haitian Refugee Center v. Smith*, 676 F.2d 1023 (5th Cir. 1982); *Fleurinor v. INS*, 585 F.2d 129 (5th Cir. 1978); *Matter of Exilus*, 18 I&N Dec. 276 (BIA 1982); *Matter of Lam*, *supra; Matter of Chumpitazi*, 16 I&N Dec. 629 (BIA 1978); *Matter of Dunar*, 14 I&N Dec. 310 (BIA 1973).

Upon consideration of the record in its entirety, we conclude that the respondent has failed to establish a well-founded fear of persecution. We recognize the difficulty a person may face in establishing that he has a well-founded fear of persecution. Nevertheless, the evidence here does not establish such a well-founded fear.

The respondent's application for asylum merely states that he fears persecution because he is a Chaldean Christian and has refused to join the ruling Baath party. He was never arrested or detained. He was a compressor repairman in Mosul, Iraq. His entire family resides in Iraq and none of them has been either arrested or detained. The only harassment he alleged was by fellow employees at work, who would pressure him to join the Baath party. At first he stated that he would be jailed for 10 years for refusing to join. He later testified that he would be hung for refusing to join but immediately changed his story to allege that he was merely threatened with being beaten. His generalized, undocumented assertions of persecution, standing alone, are not sufficient to establish eligibility for asylum or withholding of deportation. *See Rejaie v. INS*, 691 F.2d 139 (3d Cir. 1982); *Kashani v. INS*, 547 F.2d 376 (7th Cir. 1977); *see also Moghanian v. United States Department of Justice*, 577 F.2d 141 (9th Cir. 1978); *Pereira-Diaz v. INS*, 551 F.2d 1149 (9th Cir. 1977). Similarly, general allegations of political upheaval which affect the populace as a whole are insufficient for such relief. *Fleurinor v. INS, supra; Matter of Diaz*, 10 I&N Dec. 199 (BIA 1963).

On the basis of this record, we are satisfied that the respondent has not shown that he will be persecuted or that he has a well-founded fear of persecution within the contemplation of section 208(a) and 243(h) of the Act. Our conclusion as to the respondent's claim is the same whether we apply a standard of "clear probability," "good reason," or "realistic likelihood." *See Rejaie v. INS, supra; Stevic v. Sava, supra; Matter of Martinez-Romero*, 18 I&N Dec. 75 (BIA 1981), *aff'd, Martinez-Romero v. INS*, 692 F.2d 595 (9th Cir. 1982). Hence, the respondent's appeal from the denial of his

A7

applications for asylum under section 208 of the Act and withholding of deportation under section 243(h) of the Act will also be dismissed.

**ORDER:** The appeal is dismissed.

**FURTHER ORDER:** Pursuant to the immigration judge's order and in accordance with our decision in *Matter of Chouliaris,* 16 I&N Dec. 168 (BIA 1977), the respondent is permitted to depart from the United States voluntarily within such time and under such conditions as may be set by the district director; and in the event of failure so to depart, the respondent shall be deported as provided in the immigration judge's order.