**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-50163 |
| Plaintiff - Appellee, | D.C. No. 2:07-cr-00912-DDP-1 |
| v. | |
| JUAN BAUTISTA CASTRO-CABRERA, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted September 2, 2011
Pasadena, California

Before: SCHROEDER and GOULD, Circuit Judges, and MCCUSKEY, Chief
District Judge.**

Juan Bautista Castro-Cabrera ("Castro-Cabrera") seeks review of the district

court's denial of his motion to dismiss his indictment, as well as review of the

district court's grant of the government's related motion *in limine*. The standard of

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Michael Patrick McCuskey, Chief District Judge for
the U.S. District Court for Central Illinois, Urbana, sitting by designation.

review is de novo. *United States v. Caruto*, 627 F.3d 759, 762 (9th Cir. 2010) (district court's denial of a motion to dismiss an indictment reviewed de novo); *United States v. Schafer*, 625 F.3d 629, 637 (9th Cir. 2010) (district court's decision to exclude evidence of a particular defense reviewed de novo).

A grand jury returned an indictment against Castro-Cabrera for being an alien found in the United States following deportation in violation of 8 U.S.C. § 1326. Castro-Cabrera filed a motion to dismiss the charge, arguing that he was a United States citizen because he was born out of wedlock to a U.S. citizen mother and thus qualified for derived citizenship. 8 U.S.C. §1409(c) (providing for United States citizenship if the person is born "out of wedlock" and if "the mother had the nationality of the United States at the time of such person's birth, and if the mother had previously been physically present in the United States . . . for a continuous period of one year."). The district court denied the motion, concluding that Castro-Cabrera was born in wedlock. The government then filed a motion *in limine* asking the district court to exclude evidence and argument relating to the defense of acquired citizenship pursuant to 8 U.S.C. § 1409(c), which the district court granted. Castro-Cabrera then pled guilty with a conditional guilty plea, reserving the right to appeal the district court's decision. This appeal followed.

Castro-Cabrera argues that the district court erred in denying his motion to dismiss because he was born "out of wedlock." He contends that his parents were never validly married because, under the Mexican Constitution, his mother—a United States citizen—was required to request and obtain permission from the Mexican government to marry a Mexican citizen, and that she did not do this. Even though Castro-Cabrera's parents were both deceased and had been married long ago in 1951, he sought an annulment from a Mexican court, which granted it and held that the marriage was void *ab initio* under Mexican law.

The determination of Castro-Cabrera's citizenship depends on the meaning of "out of wedlock" as the term is used in 8 U.S.C. §1409(c). This is a question of federal statutory law. But determination of the federal question of interpretation of the federal statute can be informed by considering legal relationships created under state or foreign law. *See Minasyan v. Gonzales*, 401 F.3d 1069, 1076 (9th Cir. 2004).

The district court denied the motion to dismiss, despite the annulment. Experts for both Castro-Cabrera and the government had opined that Mexican law presumptively treats the children of a marriage that is later annulled as legitimate children—in other words, as born in wedlock. On this ground the district court concluded Castro-Cabrera was not born out of wedlock. We agree. We also note

that the purposes for which Congress established the liberalized standard in 8 U.S.C. §1409(c) were not applicable. The district court further concluded that in analogous immigration contexts, courts have refused to "relate back" a foreign or state court annulment, divorce, or separation decree, even if the judgment at issue purports to annul a marriage *ab initio*. *See, e.g.*, *Hendrix v. INS*, 583 F.2d, 1102, 1103 (9th. Cir. 1978) (finding that a marriage later annulled *ab initio* does not relate back to the time of an immigrant's entry). We agree that in an appropriate case such as this our precedent permits a district court to refuse to give retroactive effect to a change in family status determined by a foreign court, in part out of concern that it could be a way to manipulate the outcome of federal immigration law proceedings. *See*, *e.g.*, *Hendrix v. INS*, *supra*. *See also Bustamante-Barrera v. Gonzales*, 447 F. 3d 388, 395-96 (5th Cir. 2006); *Fierro v. Reno*, 217 F. 3d 1 (1st Cir. 2000); *Garcia v. INS*, 31 F. 3d 441 (7th Cir. 1994).[1] We affirm the district court's denial of the motion to dismiss the indictment.

---

[1] The government also raises the question of whether the Mexican annulment decree is proper under Mexican law, arguing that it was moot because both of the parents were dead at the time it was entered; that there was no real opportunity for any interested person to contest the annulment; the parents being dead weren't available to contest the charges underlying the annulment; and no government officials appeared in the action. We need not reach the issue of validity of the annulment because under *Hendrix*, the district court permissibly could decline to give it retroactive effect.

4

Castro-Cabrera further argues that the district court erred when it granted over objection the government's motion *in limine* to exclude any evidence or argument at trial regarding the defense of acquired citizenship pursuant to the standard set forth in 8 U.S.C. § 1409(c). Citizenship is not an affirmative defense but rather alienage, the lack of U.S. citizenship, is an element of the crime that the prosecution must prove. *United States v. Sandoval-Gonzalez*, 642 F.3d 717, 722–23 (9th Cir. 2011). A defendant has a right to present evidence in an effort to cast doubt on the government's proof of alienage, without any initial burden of production or proof being placed on the alien. *Id.* However, a defendant must still meet the requirement of relevance to present evidence on alienage. *Id.* at 723.

Castro-Cabrera argues that *United States v. Marguet-Pillado*, — F.3d —, No. 10-50041, 2001 WL 3524198 (9th Cir. Aug. 12, 2011), requires reversing the district court's decision. In *Marguet-Pillado*, we held that the district court erred by not allowing the defendant to present evidence of derivative citizenship. *Id.* However, in that case there was a dispute whether the defendant was biologically related to his citizen father. *Id.* The proffered evidence was relevant to a factual issue in dispute. But here, even if Castro-Cabrera's factual allegations are accepted as true, the controlling issue is the meaning of the statutory terms of 8 U.S.C. §1409(c). Because the district court correctly concluded that Castro-Cabrera was

5

not born "out of wedlock" within the meaning of §1409(c) and was considered a legitimate child under Mexican law, and because the annulment in a Mexican court after the parents were dead did not compel retroactive effect, Castro-Cabrera's proffered evidence was irrelevant after the district court declined to dismiss the indictment. We hold that the district court did not err in granting the government's motion *in limine*. The district court properly could consider that such evidence would be unduly confusing to the jury in light of the district court's decision not to dismiss the indictment.

**AFFIRMED.**